**SUGARMAN LAW, LLC**
**BARRY R. SUGARMAN**
**ATTORNEY ID NO. 023191991**
80 East Main Street
Somerville, New Jersey 08876
(732) 877-1975
Attorneys for Plaintiff(s)

| | | |
|---|---|---|
| **LILLIAN KEENE, as Power of Attorney for HERMAN KEENE,**<br><br>Plaintiff,<br><br>vs.<br><br>**UNITED STATES OF AMERICA;**<br><br>**VA NEW JERSEY HEALTH CARE SYSTEM;**<br><br>**NEW JERSEY HEALTH CARE SYSTEM;**<br><br>**LYONS VA MEDICAL CENTER;**<br><br>**VA COMMUNITY LIVING CENTER – LYONS;**<br><br>**ABC COMPANIES (1-10);**<br>**DEF PARTNERSHIPS (1-10);**<br>**JOHN DOE PHYSICIANS (1-10);**<br>**JANE DOE NURSES (1-20);**<br>**JANE MOE TECHNICIANS (1-10);**<br>**CNAs and PARAMEDICAL EMPLOYEES (1-20) (Fictitious names, the real names being unknown),**<br><br>Defendants. | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br>NEWARK VICINAGE<br><br>**CIVIL ACTION**<br><br>**COMPLAINT**<br><br>**REJECTION OF NOTICE OF ALLOCATION**<br><br>**PRESERVATION NOTICE**<br><br>**DEMAND FOR TRANSCRIPTION**<br><br>**STATEMENT OF DAMAGES**<br><br>**AFFIDAVIT OF MERIT** |

Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, residing at 1628 Myrtle Avenue, City of Plainfield, County of Middlesex, State of New Jersey, by way of Complaint against each of the above captioned Defendants, individually and collectively, alleges and states as follows:

## I.   JURSIDICTION AND VENUE

1.      This Court's jurisdiction is invoked pursuant to the Federal Tort Claims Act, 28 U.S.C.A §§1346(b) and 2674, as well as 28 U.S.C.A. §1367 and 28 U.S.C.A. §2675(a).

2.      On or about April 14, 2021 Plaintiff served a Standard Form 95 Claim with the United States Department of Veteran Affairs alleging that the VA New Jersey Health Care System, the Lyons VA Medical Center, the VA Community Living Center – Lyons and all other entities responsible for the ownership, operation and management of the VA Community Living Center in Lyons, New Jersey as well as its agents, servants, employees, apparent employees and contractors **(hereafter "VA" or "VA Defendants")** were negligent, deviated from the standard of care and violated the resident's rights of Herman Keene in connection with his care while he was a resident at the VA Community Living Center – Lyons facility.   More specifically, and without limitation, the VA Defendants failed to provide reasonable and adequate care to Mr. Keene to prevent him from developing bilateral buttocks pressure injuries and additional wounds.   The VA Defendants further failed to provide Mr. Keene with reasonable and adequate pressure injury treatment to prevent these wounds from worsening, becoming infected and causing him additional damages.

3.      Plaintiff's Standard Form 95 Claim filed with the United States Department of Veteran Affairs further alleges that, as a direct result and consequence of the Defendants' misconduct consisting of acts and omissions, Mr. Keene suffered severe bilateral buttocks pressure injuries and additional wounds with related injuries and damages.   Mr. Keene has suffered and will continue to suffer extensive and severe physical and emotional conscious pain and suffering as a result of these permanent injuries and the required treatment caused by Defendants' negligence and additional misconduct.

4.      The United States Department of Veteran Affairs, the VA Community Living

Center – Lyons and all VA Defendants named herein have neither rejected, validated nor resolved Plaintiff's claims as of the present date.

5.      The amount in controversy exceeds $150,000 on each count of Plaintiff's Complaint exclusive of interest and costs.

6.      Venue in the District of New Jersey is proper under 28 U.S.C.A §1391 because the events or omissions giving this action occurred within the District.

## II.    PARTIES

7.      Plaintiff is Herman Keene by his Power of Attorney Lillian Keene.

8.      Lillian Keene is Herman Keene's wife and lawful Power of Attorney. In this capacity, she has the authority to prosecute all claims set forth in the within Complaint.

9.      Lillian Keene resides in Plainfield, New Jersey.

10.     Herman Keene resides at the VA Community Living Center – Lyons, 151 Knollcroft Road, Lyons, New Jersey.

11.     Mr. Keene has resided at the VA Community Living Center – Lyons **(hereafter "VA – CLCL")** continuously since on or about September 2, 2015.

12.     Mr. Keene is a long-term skilled nursing care (nursing home) resident at VA – CLCL and was so in 2019 and at all times relevant to his Complaint.

13.     Defendant VA New Jersey Health Care System was a licensed owner, operator and/or manager of the VA – CLCL facility in 2019 and at all times relevant to Plaintiff's Complaint.

14.     Defendant New Jersey Health Care System was a licensed owner, operator and/or manager of the VA – CLCL facility in 2019 and at all times relevant to Plaintiff's Complaint.

15.     Defendant Lyons VA Medical Center is a healthcare facility located at 151

Knollcroft Road, Lyons, New Jersey and was so in 2019 and at all times relevant to Plaintiff's Complaint.

16.     Defendant Lyons VA Medical Center is a healthcare facility that operates as an independent entity and/or within and as part of Defendant New Jersey Health System and/or Defendant VA New Jersey Health Care System and did so in 2019 and at all times relevant to Plaintiff's Complaint.

17.     Defendant Lyons VA Medical Center was a licensed owner, operator and/or manager of the VA – CLCL facility in 2019 and at all times relevant to Plaintiff's Complaint.

18.     Defendant VA Community Living Center – Lyons is a healthcare facility located at 151 Knollcroft Road, Lyons, New Jersey and was so in 2019 and at all times relevant to Plaintiff's Complaint.

19.     Defendant VA Community Living Center – Lyons is a long-term skilled nursing care facility (nursing home) that operates pursuant to New Jersey and/or federal law and did so in 2019 and at all times relevant to Plaintiff's Complaint.

20.     Defendant VA Community Living Center – Lyons operates as an independent entity and/or within and as part of Defendant New Jersey Health System and/or Defendant VA New Jersey Health Care System and/or Defendant Lyons VA Medical Center and did so in 2019 and at all times relevant to Plaintiff's Complaint.

21.     Defendant VA Community Living Center – Lyons was a licensed owner, operator and/or manager of the VA – CLCL facility in 2019 and at all times relevant to Plaintiff's Complaint.

22.     Defendant United States of America was a licensed owner, operator and/or manager of the VA – CLCL facility in 2019 and at all times relevant to Plaintiff's Complaint.

4

23.     Defendant United States of America further owned, operated, managed and/or was otherwise responsible for the operation of Defendants VA New Jersey Health Care System, New Jersey Health Care System, Lyons VA Medical Center and VA Community Living Center – Lyons in 2019 and at all times relevant to Plaintiff's Complaint.

24.     Defendant United States of America employed all nursing staff **(defined as registered nurse, licensed practical nurses, nurse's aides)** medical staff, therapists and all persons and/or entities involved in and responsible for Herman Keene's care and treatment at VA – CLCL in 2019 and at all times relevant to Plaintiff's Complaint.

25.     By virtue of the aforementioned employment relationship, Defendant United States of America is responsible for the negligence, deviations from the standard of care, violations of resident's rights and additional misconduct by all such persons and/or entities in Herman Keene's care and treatment as detailed herein.

26.     By virtue of its ownership, operation, management and/or other responsibility for the named Defendants as set forth in paragraph 23 above, Defendant United States of America is responsible for the negligence, deviations from the standard of care, violations of residents rights and additional misconduct all such persons and entities in Herman Keene's care and treatment as detailed below.

27.     At all times relevant hereto, Defendant VA New Jersey Health Care System employed all nursing staff **(defined as registered nurses, licensed practical nurses, nurse's aides)**, medical staff, therapists and all persons and/or entities involved in and responsible for Herman Keene's care and treatment at VA – CLCL in 2019 and at all times relevant to Plaintiff's Complaint.

28.     By virtue of this relationship, Defendant VA New Jersey Health Care System is

responsible for the negligence, deviations from the standard of care, violations of resident's rights and additional misconduct by all such persons and/or entities in Herman Keene's care and treatment as detailed below.

29.     At all times relevant hereto, Defendant New Jersey Health Care System employed all nursing staff **(defined as registered nurses, licensed practical nurses, nurse's aides)**, medical staff, therapists and all persons and/or entities involved in and responsible for Herman Keene's care and treatment at VA – CLCL in 2019 and at all times relevant to Plaintiff's Complaint.

30.     By virtue of this relationship, Defendant New Jersey Health Care System is responsible for the negligence, deviations from the standard of care, violations of resident's rights and additional misconduct by all such persons and/or entities in Herman Keene's care and treatment as detailed below.

31.     At all times relevant hereto, Defendant Lyons VA Medical Center employed all nursing staff **(defined as registered nurses, licensed practical nurses, nurse's aides)**, medical staff, therapists and all persons and/or entities involved in and responsible for Herman Keene's care and treatment at VA – CLCL in 2019 and at all times relevant to Plaintiff's Complaint.

32.     By virtue of this relationship, Defendant Lyons VA Medical Center is responsible for the negligence, deviations from the standard of care, violations of resident's rights and additional misconduct by all such persons and/or entities in Herman Keene's care and treatment as detailed below.

33.     At all times relevant hereto, Defendant VA Community Living Center - Lyons employed all nursing staff **(defined as registered nurses, licensed practical nurses, nurse's aides)**, medical staff, therapists and all persons and/or entities involved in and responsible for Herman Keene's care and treatment at VA – CLCL in 2019 and at all times relevant to Plaintiff's

Complaint.

34.     By virtue of this relationship, Defendant VA Community Living Center - Lyons is responsible for the negligence, deviations from the standard of care, violations of resident's rights and additional misconduct by all such persons and/or entities in Herman Keene's care and treatment as detailed below.

35.     Herman Keene received treatment from nurses, licensed practical nurses, nurse's aides, physicians, other employees, apparent employees, contractors, agents and servants of the VA Defendants.  Mr. Keene was unable to select or choose any of the professionals, licensed professionals and/or other individuals who rendered care to him and believes they are all employees and/or agents of the VA Defendants.

36.     Defendants ABC Companies (1-10) and DEF Partnerships (1-10), fictitious names, the real names being unknown, are corporations or other legal entities involved with the care, treatment and supervision of Herman Keene and/or involved with the ownership, operation and/or management of the entities and/or persons that provided care, treatment and supervision to Herman Keene while he was a VA – CLCL resident in 2019 and at all times relevant to Plaintiff's Complaint.

37.     Defendants John Doe Physicians (1-10), Jane Doe Nurses (1-20), Jane Moe Technicians (1-10) and CNAs and Paramedical Employees (1-20), fictitious names, the real names being unknown, are medical, nursing and other professional including, but not limited to, registered nurses, licensed practical nurses, nurse's aides, physicians, therapists, wound care professionals and others who provided and who were responsible for providing care, treatment and supervision to Herman Keene while he was a VA – CLCL resident in 2019 and at all times relevant to Plaintiff's Complaint.

### III.    FACTS COMMON TO ALL ALLEGATIONS

Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, repeats and re-alleges the allegations contained in paragraphs 1 – 37 above as though more fully set forth herein.   **Plaintiff, consistent with Mr. Keene's voluminous and continuing VA – CLCL care record including more than 6,000 pages, and on information and belief, further alleges and states as follows:**

38.    Herman Keene's date of birth is April 2, 1945.   He is currently 76 years old.

39.    Herman Keene served in the United States Army during the Vietnam War.

40.    VA – CLCL records document Herman Keene was first admitted to VA – CLCL on September 2, 2015.

41.    Mr. Keene was 70 years old on admission to VA – CLCL.

42.    VA – CLCL records document Mr. Keene resided continuously at VA – CLCL since September 2, 2015.

43.    Mr. Keene remains a VA – CLCL resident today.

44.    As detailed in VA – CLCL's care record, Mr. Keene was admitted to the facility after suffering a cerebral vascular accident (stroke) and/or other neurological injury.

45.    VA – CLCL's care record documents Mr. Keene's July 2015 stroke with resulting right hemiparesis and other neurological sequelae.

46.    Nursing and medical entries in VA – CLCL's care record note Mr. Keene's additional medical history including, but not limited to, total immobility, incontinence, dementia, Parkinson's and swallowing difficulties.

47.    Plaintiff's claims herein are for injuries Herman Keene suffered while in the care of VA – CLCL and all VA Defendants.   The primary injuries are severe pressure injuries (bedsores) on his bilateral buttocks, sacrum/buttocks and additional wounds.   Mr. Keene's

additional injuries include, but are not limited to, other conditions that caused and contributed to the pressure injuries as well as other conditions that were caused and/or exacerbated by these pressure injuries (e.g. infection, osteomyelitis malnutrition, dehydration, etc.).

48.     Based on the foregoing, Plaintiff's "Facts Common to All Allegations" focuses on Herman Keene's pressure injury risk, the care (or lack of care) he received from the VA Defendants in response to this risk, the severe bilateral buttocks pressure injuries first diagnosed on April 26, 2019, the care and treatment the VA Defendants provided (or failed to provide) after the wounds' diagnosis, the treatment Mr. Keene received from other medical providers for the severe injuries caused by the VA Defendants' negligence and additional misconduct, the wounds' progression, worsening and/or healing, Mr. Keene's additional pressure injuries and wounds, related injuries as well as Mr. Keene's pain and suffering and additional damages.   While Mr. Keene's VA – CLCL care record is voluminous and continuing, Plaintiff efficiently outlines his claims against the VA Defendants pursuant to applicable pleading requirements.

49.     Mr. Keene did not have any pressure injuries (bedsores) on admission to VA – CLCL.

50.     Mr. Keene was at risk and at high risk for pressure injuries (bedsores) on admission to VA – CLCL due to his substantial and total mobility needs associated with his hemiparesis/paralysis, muscle weakness, overall physical condition, incontinence and care needs for all of his Activities of Daily Living (**"ADLs"**).

51.     On admission and thereafter the VA – CLCL care record documents that Defendants' nursing staff, physicians and others conducted skin assessments and/or pressure injury assessments of Mr. Keene.

52.     Based on "Braden Pressure Ulcer Risk Assessments" and additional skin

assessments, VA – CLCL determined that Mr. Keene was at risk, moderate risk and/or high risk for pressure injuries.

53.     Mr. Keene remained at risk, moderate risk and/or high risk for pressure injuries throughout his VA – CLCL residency because of his total immobility, incontinence, eating/swallowing difficulties and other factors.   This is confirmed through ongoing nursing documentation and assessments in VA – CLCL records.

54.     Relevant to Mr. Keene's April 26, 2019 diagnosis with bilateral buttocks pressure injuries, a March 28, 2019 Braden Pressure Ulcer Risk Assessment confirmed Mr. Keene's ongoing moderate risk for pressure injuries.

55.     Similarly, on April 15, 2019, a Braden Pressure Ulcer Risk Assessment again determined that Mr. Keene was at moderate risk for pressure injuries.

56.     Plaintiff alleges Mr. Keene was actually at high risk for pressure injuries in March and April 2019 and at all times relevant to his Complaint.

57.     On April 23, 2019, the day VA – CLCL transferred Mr. Keene to Morristown Medical Center **("MMC")**, its nursing staff again determined Mr. Keene was at risk, moderate risk and/or high risk for pressure injuries.

58.     Throughout his VA – CLCL residency records confirm Mr. Keene was at risk, increasing risk, moderate risk and/or high risk for pressure injuries (bedsores) due to his lack of mobility and increasing lack of mobility, need for assistance and extensive assistance with all of his ADLs and because of his overall physical impairments and/or cognitive condition.

59.     Throughout his VA-CLCL residency from on or about September 2, 2015 through on or about April 23, 2019, Mr. Keene was dependent upon and required assistance from VA-CLCL's nursing staff and other staff including (without limitation) its licensed nurses, nurse's

aides, therapists, medical staff, agents, servants, employees and all VA Defendants for all tasks involving his mobility, pressure injury prevention, ADLs and skin care. This includes, but is not limited to, manual and mechanical pressure relief, hygiene care, nutritional care, skin care and toileting/continence care.

60.     Throughout his VA-CLCL residency from on or about September 2, 2015 through on or about April 23, 2019, Mr. Keene was dependent upon and required assistance from VA-CLCL's nursing staff and other staff including (without limitation) its licensed nurses, nurse's aides, therapists, medical staff, agents, servants, employees and all VA Defendants for all tasks involving his mobility including, but not limited to, bed mobility, transfers to/from bed, transfers to/from a chair, toileting and any and all other tasks involving his mobility, pressure relief and pressure injury prevention care due to his physical and/or cognitive limitations.

61.     As a result of Mr. Keene's dependence on and extensive need for assistance from (without limitation) VA-CLCL's licensed nurses, nursing staff, nurse's aides, therapists, medical staff, agents, servants, employees and all VA Defendants as set forth herein, VA-CLCL's nursing staff and all VA Defendants and their agents, servants and employees had a duty and responsibility to provide Mr. Keene with all reasonable and necessary care and assistance to prevent him from developing pressure injuries, skin damage and other injuries. This includes, but is not limited to, mobility assistance, manual and mechanical pressure relief, incontinence care, skin care and other care as set forth herein and/or as required by the applicable standard of care.

62.     From on or about September 2, 2015 through on or about April 23, 2019, all VA Defendants were responsible for Mr. Keene's custodial care and treatment.   This further includes, without limitation, insuring he had a safe and secure living environment, that he was provided with care in a manner preserving his right to dignity and that these Defendants, individually and

11

collectively, provided him with: reasonable pressure injury (bedsore) prevention care, reasonable pressure injury (bedsore) treatment after bedsores and/or other skin damage developed, incontinence care and additional care, treatment and safety measures for Mr. Keene as a resident at risk/increasing risk/high risk for developing pressure injuries (bedsores), other skin damage and related injuries.

63.     From on or about September 2, 2015 through on or about April 23, 2019, and in 2019 specifically, VA-CLCL's nursing staff, other staff and all VA Defendants failed to provide Mr. Keene all reasonable and necessary pressure injury (bedsore) prevention care, reasonable and necessary pressure injury (bedsore) treatment, skin care, toileting/continence care and other care as required by basic nursing standards, facility policies and the applicable standard of care.

64.     The aforementioned care and treatment failures continued after the pressure injuries' diagnosis.

65.     Throughout Mr. Keene's VA-CLCL residency, VA-CLCL's nursing staff, other staff and all VA Defendants failed to provide Mr. Keene reasonable and necessary pressure relief, mobility assistance and other pressure injury (bedsore) prevention care.   This includes, but is not limited to, turning and repositioning Mr. Keene every two (2) hours while in bed, repositioning him while in a chair/wheelchair, providing him with a pressure relieving bed and/or mattress, placing a pressure relieving cushion for his chair/wheelchair, toileting/continence care, adequate nutrition and other reasonable and necessary care to prevent Mr. Keene from developing pressure injuries (bedsores). This is apparent from VA – CLCL's chart of Mr. Keene's care.

66.     During Spring 2019, the period most relevant to the development of Mr. Keene's bilateral buttocks pressure injuries, additional wounds and other damages, records document VA – CLCL's nursing staff, other staff and all VA Defendants failed to provide Mr. Keene reasonable

and necessary pressure relief, mobility assistance and other pressure injury (bedsore) prevention care. This includes, but is not limited to, turning and repositioning Mr. Keene every two (2) hours while in bed, repositioning him while in a chair/wheelchair, providing him with a pressure relieving bed and/or mattress, placing a pressure relieving cushion for his chair/wheelchair, toileting/continence care, adequate nutrition and other reasonable and necessary care to prevent Mr. Keene from developing pressure injuries (bedsores).

67.    By way of example, and without limitation, VA – CLCL's care record shows that it did not turn and reposition Mr. Keene while in bed every two (2) hours as the standard of care requires.

68.    By way of example, and without limitation, VA – CLCL's "ADL Notes" show no documentation that the nurse and or aides involved in and responsible for Mr. Keene's care turned and repositioned him every two (2) hours as the standard of care requires.   This is consistent with the Keene family's memory of the care VA – CLCL provided (and did not provide) Mr. Keene.

69.    By way of example, and without limitation, VA – CLCL records show that its nursing staff did not turn and reposition Mr. Keene every two hours as the standard of care requires on March 29th, March 30th, March 31st, April 1st, April 2nd, April 3rd, April 4th, April 6th, April 7th, April 9th, April 10th, April 11th, April 12th, April 14th, April 15th, April 16th, April 18th, April 19th, April 20th and April 21st.   This is consistent with the Keene family's memory of the care VA – CLCL provided (and did not provide) Mr. Keene.

70.    During the March – April 2019 timeframe, VA – CLCL's records further document that Mr. Keene was mostly "chairfast", "completely immobile", had a "problem" with friction on his skin and was often found to be "moist" referring to urine and/or bowel on his skin.

71.    VA – CLCL also failed to provide and/or consistently provide Mr. Keene with a

pressure relieving surface for his bed and wheelchair.

72.     By way of example, but without limitation, VA – CLCL's records document that it did not provide and/or consistently provide Mr. Keene with reasonable and adequate pressure relief for his wheelchair.   Specifically, VA – CLCL did not provide a ROHO cushion and only sporadically provided other pressure relief for his wheelchair.

73.     Mr. Keene required maximum pressure relief for his bed.   VA – CLCL staff was required to provide a bedding surface to provide maximum pressure injury relief.   This was particularly important given Mr. Keene's complete lack of mobility and other factors that placed him at risk, moderate risk and high risk for pressure injuries.

74.     VA – CLCL's records document that VA – CLCL did not provide and/or consistently provide a reasonable and adequate pressure relieving surface for Mr. Keene's bed.

75.     VA – CLCL's care record further establishes that the VA Defendants did not provide adequate pressure relieving surfaces for Mr. Keene's bed and chair/wheelchair given his known and foreseeable risk, moderate risk and/or high risk for pressure injuries.

76.     Plaintiff alleges that the foregoing facts before the development of Mr. Keene's April 26, 2019 bilateral buttocks wounds placed VA – CLCL and all VA Defendants on notice such that they knew or should have known that Mr. Keene was at high risk for pressure injuries and that it was required to provide care meeting that risk.

77.     Mr. Keene developed pressure injuries (bedsores) and additional damage on his left buttocks and right buttocks (bilateral buttocks) while he was a VA – CLCL resident in the VA Defendants' custodial care.

78.     VA – CLCL Nursing Transfer/Universal Transfer documentation confirms that it transferred Mr. Keene to MMC on April 23, 2019.

14

79.     VA – CLCL's records state that Mr. Keene did not have any wounds, pressure injuries or skin problems on transfer to MMC.

80.     Care records document that Mr. Keene was admitted to MMC from April 23, 2019 through May 1, 2019.

81.     At no time in January, February, March or April 2019 was Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, told or made aware that her husband had any pressure injuries and/or other wounds requiring care and treatment.

82.     Mrs. Keene was unaware her husband had any pressure injuries and/or other wounds when Mr. Keene was admitted to MMC.

83.     MMC Emergency Department records state that Mr. Keene has "decubitus ulcers on sacral area" at the time of Mr. Keene's admission to MMC from VA – CLCL.

84.     MMC Consult Orders document Mr. Keene's "sacral" wound on admission to MMC from VA – CLCL as well as his "severe risk" for pressure injuries.

85.     On April 24, 2019 MMC wound care staff documented multiple pressure injuries on Mr. Keene's buttocks area.   The first wound measured 5.0 x 4.0 cm and the second wound measured 2.0 x 2.0 cm.

86.     MMC's care record shows that its staff provided aggressive wound care during Mr. Keene's April 23, 2019 – May 1, 2019 admission.

87.     Mrs. Keene first became aware of her husband's multiple severe pressure injuries from MMC staff on April 26, 2019.

88.     MMC's medical and nursing staff provided all reasonable care for Mr. Keene to promote wound healing and to prevent additional wounds from developing.

89.     Despite all reasonable care and treatment, Mr. Keene's buttocks pressure injuries

persisted and worsened during his MMC admission.

90. On April 30, 2019 MMC's wound care staff noted a 2.5 x 3.0 cm unstageable pressure ulcer on Mr. Keene's left buttocks with a full thickness unstageable pressure injury on his right buttocks.

91. MMC's nursing staff further also noted a sacral pressure injury on Mr. Keene's admission from VA – CLCL.

92. Mr. Keene was readmitted to VA – CLCL on May 1, 2019.  At that time he had pressure injuries (bedsores) on his sacrum and bilateral buttocks areas that first developed at VA – CLCL.

93. On readmission to VA – CLCL records document "sacral area skin wound" as well as pressure injuries to his right buttock measuring "3cm round" and the left buttocks measuring "4.0 x 3.0 cm".

94. A wound care consult shortly after Mr. Keene's VA – CLCL re-admission confirms the presence of pressure injuries on his sacrum and bilateral buttocks.   Wound care staff noted the wounds were "Stage 3 to sacrum, Stage 3 to left ischium and unstageable to right ischium".

95. Mr. Keene's pressure injuries persisted and worsened over the coming months.   By way of example, but not limitation, the left buttocks wound measured 5.7 x 2.6 cm with slough, drainage and other signs of deterioration/breakdown; the right buttocks measured 3.0 x 4.3 cm with dark gray slough; and the sacral area was a scattered open area measuring 2.5 x 2.0 cm on May 2, 2019.

96. VA – CLCL's records document Mr. Keene's continuing severe bilateral buttocks and sacral pressure injuries on May 29, 2019.   The left buttocks measured 5.5 x 4.0 cm with yellow slough, moderate drainage and was irregular in shape.   The right buttocks measured 3.5 x

2.5 cm with loose yellow slough and an oblong shape.   There was some sacral healing.

97.     Mr. Keene's pressure injuries and other wounds persisted and worsened in the coming months.   This is outlined below and set forth in related care records.

98.     By way of example, but not limitation, on June 13, 2019 the left buttocks and right buttocks pressure injuries were larger and substantially "covered with soft brown slough".

99.     On June 18, 2019 VA – CLCL's wound specialist noted that both buttocks wounds were Stage IV and that the sacral pressure injury remained unstageable. She performed surgical debridement.

100.    The VA Defendants' care records document the buttocks pressure injuries' persistence, worsening and treatment.

101.    By way of example, but not limitation, on June 30, 2019 both buttocks pressure injuries remained large Stage IV pressure injuries with drainage and undermining.   Mr. Keene required additional surgical debridement for the pressure injuries and wound-vac placement.

102.    After Mr. Keene's re-admission to VA – CLCL on May 1, 2019, VA – CLCL's nursing staff, other staff and all VA Defendants failed to provide reasonable care and treatment to prevent the pressure injuries (bedsores) from worsening.

103.    VA – CLCL's nursing staff and all VA Defendants failed to provide reasonable and necessary care and treatment for the pressure injuries in accordance with basic nursing standards, facility policies and the applicable standard of care.

104.    VA-CLCL's and all VA Defendants' care and treatment failures include its' failure to provide Mr. Keene reasonable and necessary pressure relief, mobility assistance and other pressure injury (bedsore) prevention care and treatment. This includes, but is not limited to, turning and repositioning Mr. Keene every 2 hours while in bed, repositioning him while in a

chair/wheelchair, providing him with an adequate pressure relieving bed and/or mattress, placing an adequate pressure relieving cushion for his wheelchair, continence care, hygiene care, adequate nutrition and other reasonable and necessary care to prevent Mr. Keene's severe pressure injuries from worsening.

105.    By way of example, but not limitation, VA – CLCL's care record lacks documentation that the nurse's aides performed turning and repositioning every two (2) hours for Mr. Keene on many days in May and June 2019.  This is consistent with the Keene family's memory of the care VA – CLCL provided (and did not provide) Mr. Keene.

106.    Further, VA – CLCL's care record does not document placement of a ROHO cushion for a wheelchair or a reasonable and adequate pressure relieving bed and mattress to meet Mr. Keene's care needs.

107.    The VA Defendants' failure to provide reasonable care to Mr. Keene continued in May, June, and the Summer 2019.   Mr. Keene's severe pressure injuries acquired at VA – CLCL persisted and worsened.

108.    On July 5, 2019, VA – CLCL's records document a severe Stage IV bilateral buttocks pressure injury in a deteriorated state.

109.    On or about July 8, 2019 Mr. Keene also developed a right heel pressure injury while in the custodial care of VA – CLCL and all VA Defendants.   His severe buttocks and sacral pressure injuries continued.

110.    VA – CLCL's records document Mr. Keene's severe Stage IV decubitus ulcers measuring 6.0 x 4.0 x 2.3 cm (right buttock), 5.0 x 5.5 x 1.5 cm (left buttock) and 3.0 x 6.0 cm (sacral).

111.    On July 9, 2019 Mr. Keene was again hospitalized for surgical debridement.

112.    Hospital physicians determined that, in addition to the multiple severe pressure injuries, Mr. Keene had osteomyelitis (bone infection) from the right buttocks pressure injury.

113.    Mr. Keene returned to VA – CLCL on July 10, 2019.

114.    Mr. Keene was again hospitalized for a bone biopsy and antibiotic therapy related to the osteomyelitis detected on July 9, 2019.

115.    On this admission doctors determined Mr. Keene had Stage IV pressure injuries on his sacrum/coccyx, right buttocks and left buttocks.   They also saw a right heel pressure injury.

116.    Hospital records show that Mr. Keene had additional debridement during this admission.   Doctors confirmed their clinical diagnosis of osteomyelitis.

117.    Mr. Keene was transferred back to VA – CLCL on July 14, 2019.

118.    Mr. Keene's multiple severe pressure injuries persisted and worsened.

119.    Mr. Keene was transferred to MMC on July 19, 2019.   His pressure injuries remained severe and infected.   He had fever with a rapid heart rate.

120.    Mr. Keene remained at MMC from July 19, 2019 through July 22, 2019.   He was discharged back to VA – CLCL.

121.    Thereafter, in July and August 2019 Mr. Keene had outpatient treatment at the Robert Wood Johnson Center for Wound Healing.

122.    Mr. Keene's pressure injuries persisted with little healing.   By way of example, but without limitation, on July 25, 2019 the right buttocks pressure injury was Stage IV measuring 5.8 x 4.5 x 2.0 cm with undermining.   The Stage IV pressure injury on the left buttocks measured 5.5 x 5.0 x 2.5 cm with undermining.   Both pressure injuries were necrotic and in a deteriorated state.   Treatment continued with a bilateral wound-vac.

123.    From July 2019 through October 2019 VA – CLCL's nursing staff, other staff and

all VA Defendants failed to provide Mr. Keene with reasonable nursing care and treatment to prevent the pressure injuries (bedsores) and other skin damage from worsening and failed to provide reasonable and necessary care and treatment for the pressure injuries (bedsores) in accordance with basic nursing standards, facility policies and the applicable standard of care.

124.   During this period records document and Mr. Keene's family recalls that VA – CLCL's nursing staff, other staff and all VA Defendants failed to provide Mr. Keene reasonable and necessary pressure relief, mobility assistance and other pressure injury prevention care and pressure injury treatment.   This includes, but is not limited to, turning and repositioning Mr. Keene every 2 hours while he is in bed, repositioning while in a wheelchair, providing him with an adequate pressure relieving bed and/or mattress, placing an adequate pressure relieving ROHO cushion for his wheelchair, continence and hygiene care, adequate nutrition and other reasonable and necessary care to prevent Mr. Keene's multiple severe pressure injuries from worsening.

125.   By way of example, but not limitation, during the July – October 2019 timeframe, there are many days where VA – CLCL's nursing staff did not turn and reposition Mr. Keene every 2 hours as the standard of care requires.   This is evident from care records and the Keene family's recollection.

126.   During this period there is no documentation of a ROHO cushion for when Mr. Keene was out of bed to a chair/wheelchair.   Records also substantiate that VA – CLCL and all VA Defendants did not always provide adequate pressure reliving surfaces for Mr. Keene's bed.

127.   During September and October 2019 Mr. Keene's multiple severe Stage IV pressure injuries had only modest healing.

128.   VA – CLCL's records document that the right buttocks pressure injury was 2.2 x 2.5 x 0.2 cm (1cm) with the left buttock pressure injury measuring 4.0 x 4.0 x 1.0 cm depth on

September 17, 2019.

129.    Mr. Keene received additional treatment from Robert Wood Johnson Center for Wound Healing in October 2019.   Treatment included chemical cauterization, new wound dressings, offloading and additional pressure relief.

130.    During the October 2019 treatment at the RWJ Center for Wound Healing Mr. Keene's pressure injuries showed modest signs of healing.

131.    Mr. Keene's pressure injuries remained severe with limited healing in late 2019 and early 2020.

132.    VA – CLCL's care records recount and Mr. Keene's family recall that in late 2019 and early 2020 VA – CLCL's nursing staff, other staff and all VA Defendants did not provide and consistently provide reasonable and necessary care and treatment to Mr. Keene as required by the standard of care to prevent his severe pressure injuries and other skin damage from persisting and becoming worse.

133.    VA – CLCL records and Mr. Keene's family attest to the fact that Mr. Keene suffered multiple severe Stage IV pressure injuries while in the custodial care of VA – CLCL and all VA Defendants.

134.    VA – CLCL records and Mr. Keene's family will establish that Mr. Keene's multiple severe Stage IV pressure injuries and other skin damage caused (and still cause) him great pain and suffering.

135.    Mr. Keene endured (and still endures) great physical and emotional pain and suffering from his multiple severe Stage IV pressure injuries and all of the treatment required. VA – CLCL's care records note that Mr. Keene would not give up and indicated he would "fight until the end".

136.   Mr. Keene's multiple Stage IV pressure injuries caused and required great expense for his care and treatment.

137.   All Defendants' care and treatment of Mr. Keene as set forth above was not reasonable – it was negligent, deviated from and fell below the standard of care.

138.   All Defendants' care and treatment of Mr. Keene as set forth above was not reasonable – it was negligent, deviated from and fell outside acceptable treatment standards.

139.   All Defendants' care and treatment of Mr. Keene as set forth above violated his statutory and/or regulatory resident's rights.

140.   Mr. Keene's multiple severe Stage IV pressure injuries and other damages that developed, persisted and worsened at VA – CLCL did not heal well or fully.   They caused him continuing and ongoing pain and suffering and need for additional care and treatment.

141.   Mr. Keene continues suffering physically, emotionally and otherwise as a result of the multiple severe Stage IV pressure injuries that developed, persisted and worsened at VA – CLCL as a result of all VA Defendants' negligence, deviations from the standard of care and violation of his resident's rights.

142.   Mr. Keene's injuries and the effects therefrom are permanent.

143.   Plaintiff's Complaint against VA-CLCL and all VA Defendants is for Mr. Keene's injuries and all injury related damages.   Consistent with his Standard Form 95 Claim filed with the United States Department of Veteran Affairs, Plaintiff hereby demands $5,000,000 for Mr. Keene's personal injuries, related damages and all damages available at law.

IV.   **COUNT ONE**

**NEGLIGENCE AND GROSS NEGLIGENCE**

Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, repeats and re-alleges the allegations contained in Paragraphs 1 – 143 above as though more fully set forth herein and further alleges and states as follows:

144.   Herman Keene was admitted to VA-CLCL on or about September 2, 2015.

145.   Herman Keene was 70 at the time his VA-CLCL residency commenced.

146.   Mr. Keene was a VA-CLCL resident in 2019 and at all times relevant to his Complaint.

147.   As a VA-CLCL resident Mr. Keene was in the custodial care and under the exclusive control of VA-CLCL, its agents, servants, employees and contractors and all VA Defendants.

148.   VA-CLCL and all VA Defendants had a legal duty and responsibility to provide all reasonable care to Mr. Keene in response to his care needs.

149.   VA-CLCL and all VA Defendants had a legal duty and responsibility to provide Mr. Keene with all reasonable care within all nursing, medical and other applicable accepted treatment standards.

150.   VA-CLCL and all VA Defendants further had a legal duty and responsibility to exercise the degree of care and skill in the treatment of Herman Keene in accordance with generally accepted nursing, medical and additional standards of care and skill in their assessment, examination, day-to-day care, activity of daily living assistance, monitoring, supervision, care planning, pressure injury prevention care, pressure injury treatment and all other reasonable and necessary custodial care for Herman Keene and other VA-CLCL residents.

151.   The provisions of OBRA (Omnibus Budget Reconciliation Act of 1987) were applicable with regard to Herman Keene's condition as it existed for his care in 2019 and at all times during his VA-CLCL residency and otherwise relevant to his Complaint.

152.   The provisions of OBRA (Omnibus Budget Reconciliation Act of 1987) were applicable with regard to Defendants' care of Herman Keene in 2019 and at all times during his VA-CLCL residency and otherwise relevant to his Complaint.

153.   The VA Defendants held themselves out as specialists in the field of adult nursing care, rehabilitation and long term skilled care with the expertise necessary to maintain the health and safety of persons unable to care for themselves.

154.   The VA Defendants were under a contractual, common law and statutory duty to provide reasonable health care and to provide care for the health, safety and security of Herman Keene during the period he was a resident in their custodial care at VA-CLCL consistent with existing community standards.

155.   At all times pertinent thereto, Herman Keene has been a VA-CLCL resident pursuant to the terms of an Admission Agreement.   As such, he is under the exclusive care and control of the VA Defendants and their agents, servants, employees and/or contractors.

156.   The VA Defendants and their agents, servants, employees and/or contractors failed, refused and/or neglected to perform the duties to provide reasonable care to and for Herman Keene who was unable to attend to his own health and safety.

157.   The VA Defendants and their agents, servants, employees and/or contractors negligently and carelessly provided (and failed to provide) reasonable care and treatment to Herman Keene. Their care and lack of care of Mr. Keene as described herein and as will be developed through discovery was negligent and grossly negligent.

158.    More specifically, and without limitation, the VA Defendants and their nursing staff knowingly and negligently failed to provide Herman Keene with the required reasonable care so that Mr. Keene would not develop injuries including, but not limited to, pressure injuries (bedsores), skin damage, related infections, and other injurious and/or life threatening conditions.

159.    More specifically, and without limitation, the VA Defendants and their nursing staff knowingly and negligently failed to provide Herman Keene with the required reasonable care and treatment to prevent these injuries and/or conditions from developing, progressing, worsening and causing his additional injuries and damages.

160.    The VA Defendants failed to have reasonable policies and procedures in place to care for its residents, including Mr. Keene, to prevent his injuries.

161.    All of the VA Defendants' acts and omissions, and the care provided (and not provided) by the VA Defendants, their agents, servants, employees and/or contractors as described herein fell within the course and scope of their agency and employment with VA-CLCL and/or each VA Defendant and in furtherance of each and every Defendant's business.

162.    The negligence, gross negligence, and careless conduct of the VA Defendants and their agents, servants, employees and/or contractors violated multiple federal and New Jersey statutes and regulations applicable to Mr. Keene's care as a New Jersey nursing home resident. These statutory and regulatory violations are a part of the VA Defendants' negligent and grossly negligent misconduct.

163.    The VA Defendants are responsible for hiring, training and supervising competent supervisors, managers, caregivers, nurses, licensed practical nurses, certified nursing assistants, nurse's aides and other personnel necessary to provide care to and to oversee and monitor the care and treatment of the residents at VA-CLCL.   The VA Defendants, individually and collectively,

owed this duty to Herman Keene.

164.    The VA Defendants and its' managers, supervisors, caregivers, nurses, licensed practical nurses, certified nursing assistants, nurse aides, other personnel and/or contractors at VA-CLCL failed to exercise due and reasonable care in the hiring of a sufficient number and sufficiently qualified personnel to provide all due and reasonable care to Herman Keene for his ongoing health, security and safety.

165.    The VA Defendants and its' managers, supervisors, caregivers, nurses, licensed practical nurses, certified nursing assistants, nurse aides, other personnel and/or contractors at VA-CLCL failed to exercise due and reasonable care in the training of its personnel to provide all due and reasonable care to Herman Keene for his ongoing health, security and safety.

166.    The VA Defendants and its' managers, supervisors, caregivers, nurses, licensed practical nurses, certified nursing assistants, nurse aides, other personnel and/or contractors at VA-CLCL failed to exercise due and reasonable care in managing, monitoring and/or supervising VA-CLCL personnel providing care to Herman Keene for his ongoing health, security and safety.

167.    The VA Defendants are further liable for their negligence, gross negligence, carelessness and recklessness related to the hiring, training, management, monitoring and supervision of its' personnel providing care to Herman Keene.

168.    The VA Defendants are directly liable and vicariously liable for their negligence, gross negligence, carelessness and recklessness related to the hiring, training, management, monitoring and supervision of its personnel providing care to Herman Keene and for the negligent care (acts and omissions) of its employees, agents and/or contractors under the doctrine of *Respondeat Superior*.

169.    The VA Defendants are directly liable and vicariously liable for their negligence,

gross negligence, carelessness and recklessness related to the VA-CLCL's staff's failure to provide reasonable pressure injury prevention care and pressure injury treatment, skin care treatment and other treatment to Herman Keene during his VA-CLCL residency under the doctrine of *Respondeat Superior*.

170. The negligence, gross negligence, and careless conduct of the VA Defendants and their agents, servants, employees and/or contractors further included, but is not limited to, acts and omissions:

    a.    In violation of *N.J.S.A.* **30:13-1 et seq**. failing to provide reasonable medical care, personal care, maintenance to Mr. Keene;

    b.    In violation of *N.J.S.A.* **30:13-3(c)** by failing to admit only that number of residents for which it reasonably believed it could safely and reasonably provide nursing care and failed to provide for the safety and security of said residents;

    c.    In violation of *N.J.S.A.* **30:13-3(h)** by failing to ensure compliance with all applicable state and federal statutes and rules and regulations;

    d.    In violation of *N.J.S.A.* **30:13-5 & 5(j)** by failing to provide Mr. Keene in a manner protecting his right to a safe and decent living environment and considerate and respectful care that recognizes the dignity and individuality of the resident including the right to expect and receive appropriate assessment, management and treatment of pain as an integral component of the person's care consistent with sound nursing and medical practices;

    e.    In violation of *N.J.S.A.* **30:13-5(m)** failed not to deprive its residents of any constitutional, civil or legal right solely by the reason of admission to a nursing home;

    f.    In violation of *N.J.S.A.* **30:13-6** by failing to discharge Mr. Keene from VA-CLCL when his needs could not be met through the service from the facility;

    g.    In violation of **42 *C.F.R.* §483.12** by failing to protect Mr. Keene from abuse and neglect;

    h.    In violation of **42 *C.F.R.* §483.10** by failing to promote care for Mr. Keene in a manner that maintained his dignity and respect in full recognition of his individuality;

    i.    In violation of **42 *C.F.R.* 483.20** by failing to conduct appropriate assessment;

    j.    In violation of **42 *C.F.R.* §483.20(d)** by failing to ensure that a nursing care plan based on Mr. Keene's problems and needs was established which contained long term goals, short term objectives and approaches to meet such needs and was reviewed and revised when the Mr. Keene's

needs changed;

k.    In violation of **42 *C.F.R.* §483.21(b)(3)(i)** by failing to provide services meeting professional standards and be provided by qualified persons in accordance with each resident's plan of care;

l.    In violation of **42 *C.F.R.* 483.70** by failing to provide necessary treatment and services to maintain Mr. Keene at the highest practical level of functioning;

m.    In violation of **42 *C.F.R.* §483.35**(a)(1) by failing to have sufficient nursing staff with the appropriate competencies and skill sets to provide nursing and related services to assure resident safety and attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by the resident assessments and individual plans of care and considering the number, acuity and diagnosis of the facility's resident population with the facility assessment required at **§ 483.70(e)**;

n.    In violation of **42 *C.F.R.* §483.40** by failing to provide sufficient nursing staff to provide nursing and related services to maintain the highest practicable, physical, mental and psychosocial well-being of Mr. Keene;

o.    In violation of **42 *C.F.R.* §483.70** by failing to comply with applicable federal and state regulations and provide care in accordance with professional standards and principles;

p.    In violation of applicable state and federal laws and regulations requiring the VA Defendants to take steps to prevent Mr. Keene from developing pressure injuries and to provide for his safety and security;

q.    In violation of **42 *C.F.R.* § 483.24** by failing to ensure Mr. Keene received and the facility provided, the necessary care and services to attain or maintain the highest practicable physical, mental and psychosocial well- being consistent with the comprehensive assessment and plan of care.

r.    In violation of **42 *C.F.R.* §483.25(b)(1)(i)** by failing to ensure that a resident who enters the facility without pressure sores does not develop pressure sores unless the individual's clinical condition demonstrates that they were unavoidable, and failing to ensure that a resident who has a pressure sore receives the necessary treatment and services to promote healing, prevent infection and prevent new sores from developing; and

s.    In violation of New Jersey regulations applicable to residents in nursing homes including, but not limited to, *N.J.A.C.* **8:39**.

171.    The aforementioned acts and omissions of the VA Defendants and their agents, servants, employees and/or contractors were negligent, grossly negligent, outrageous and performed willful, wantonly and/or with complete disregard to the care and rights of Herman Keene and in reckless indifference to Mr. Keene's care needs and rights.   Those acts further shock

the conscience of the community.

172.    As a direct and proximate result of the negligence, gross negligence, and violations of applicable federal and state statutes and regulations by the VA-CLCL and all VA Defendants, their agents, officers, servants, employees and/or contractors, Herman Keene sustained serious personal injuries, endured physical and mental pain and suffering, incurred medical expenses for care and treatment and suffered additional damages.   These injuries and damages are permanent and continuing.

173.    Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, has obtained an Affidavit of Merit from Kelly Roehm, RN, RAC-CT, CLNC describing the aforesaid and stating that the care and/or treatment rendered to Herman Keene deviated from and fell outside acceptable professional treatment standards.   **See Affidavit of Merit attached hereto as Exhibit "A"**.

**WHEREFORE** Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, demands judgment against all Defendants (real and fictitious) individually, jointly, severally and in the alternative, which will reasonably compensate Mr. Keene for his significant injuries, pain and suffering, medical expenses and other damages sustained together with attorneys' fees, punitive damages, interest, costs of suit and other damages as the Court deems proper.

## V.    **COUNT TWO**
## **DEVIATIONS FROM STANDARD OF CARE AND GROSS NEGLECT**

Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, repeats and re-alleges the allegations contained in Paragraphs 1 – 173 above as though more fully set forth herein and further alleges and states as follows:

174.    At all relevant times hereto, all VA Defendants knew or should have known that their residents, including Herman Keene, were elderly and/or disabled and in need of particular care, treatment and supervision.

175.   All VA Defendants and their agents, servants, employees and/or contractors deviated from the standard of care in their care, treatment and supervision of Herman Keene to whom they owed such duties.

176.   All VA Defendants and their agents, servants, employees and/or contractors failed to provide Herman Keene with due and reasonable care within acceptable professional treatment standards.

177.   All VA Defendants and their agents, servants, employees and/or contractors failed to own, manage and operate VA-CLCL with due and reasonable care within acceptable professional treatment standards.

178.   All Defendants' care, ownership, management and operation misconduct (acts and omissions) deviated from the standard of care, was outside acceptable professional treatment standards and rises to the level of neglect and gross neglect as defined by New Jersey Courts.

179.   The Defendants are directly liable and vicariously liable (*Respondeat Superior)* for its deviations from the standard of care and for all additional misconduct set forth in this Count of Plaintiff's Complaint.

180.   As a direct and proximate result of the aforesaid carelessness, recklessness, negligence and gross negligence of Defendants, and Defendants' deviations from the standard of care and failure to provide all reasonable care and treatment within acceptable professional treatment standards, and Defendants' failure to own/operate and manage VA-CLCL in a reasonable manner within acceptable professional standards, Herman Keene sustained serious personal injuries, endured physical and mental pain and suffering, incurred medical expenses for care and treatment and suffered additional damages.   These injuries and damages are permanent and continuing.

181.    Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, has obtained an Affidavit of Merit from Kelly Roehm, RN, RAC-CT, CLNC describing the aforesaid and stating that the care and/or treatment rendered to Herman Keene deviated from and fell outside acceptable professional treatment standards.   **See Affidavit of Merit attached hereto as Exhibit "A".**

**WHEREFORE** Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, demands judgment against all Defendants (real and fictitious) individually, jointly, severally and in the alternative, which will reasonably compensate Mr. Keene for his significant injuries, pain and suffering, medical expenses and other damages sustained together with attorneys' fees, punitive damages, treble damages, interest, costs of suit and other damages as the Court deems proper.

## VI.    COUNT THREE
## VIOLATIONS OF RESIDENT'S RIGHTS

Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, repeats and re-alleges the allegations contained in Paragraphs 1 – 181 above as though more fully set forth herein and further alleges and states as follows:

182.    The VA Defendants were subject to the provisions of *N.J.S.A.* **30:13-5** regarding the rights of residents in long-term care facilities with respect to Herman Keene's care.

183.    The VA Defendants and their agents, servants, employees and/or contractors violated Herman Keene's resident's rights including, but not limited to, those set forth in *N.J.S.A.* **30:13-5**.

184.    The entire Nursing Home Responsibilities and Rights of Residents Act (*N.J.S.A.* **30:13-1, et. seq.**) is hereby incorporated by reference. These provisions applied to Herman Keene in 2019 and throughout his VA – CLCL residency and were violated by the VA Defendants.

185.    The VA Defendants and their agents, officers, owners, servants, employees and/or contractors violated OBRA regulations, Federal and State statutes, rules and regulations and other

statutory responsibilities in its care and treatment of Herman Keene and thus violated the provisions of *N.J.S.A.* **30:13-5, 5(j)** and other Nursing Home Responsibilities and Rights of Residents Act provisions.

186.    The VA Defendants and their agents, officers, owners, servants, employees and/or contractors violated Herman Keene's right to dignity and dignified care and treatment in violation of *N.J.S.A.* **30:13-5(j)** as well as other resident's rights and nursing home facility care responsibilities set forth in the Act and elsewhere in New Jersey regulations.

187.    *N.J.S.A.* **30:13-8(a)** provides that a person shall have a private cause of action for violation of a nursing home resident's rights as defined in *N.J.S.A.* **30:13-5**.

188.    *N.J.S.A.* **30:13-8** further provides that a prevailing plaintiff in an action brought for violation of *N.J.S.A.* **30:13-5**, *N.J.S.A.* **30:13-3** and/or other provisions of the Nursing Home Responsibilities and Rights Residents Act shall recover, in addition to actual damages and punitive damages, plaintiff's reasonable attorney fees and costs of suit.

189.    The New Jersey Administrative Code further includes provisions for the resident's rights while in a facility subject to nursing home statutes and regulations.   These include, among other things, the right to safety and security while in the custody, care and control of a nursing home and its staff.   These provisions applied to Herman Keene while he was a VA-CLCL resident and were violated by the VA Defendants.

190.    The VA Defendants are directly liable and vicariously liable (*Respondeat Superior*) for all violations of Mr. Keene's resident's rights.

191.    As a direct and proximate result of the VA Defendants and their agents, officers, owners, servants, employees and/or contractors violation of Herman Keene's resident's rights, Herman Keene sustained serious personal injuries, endured physical and mental pain and suffering,

loss of dignity, incurred medical expenses for care and treatment and suffered additional damages. These injuries and damages are permanent and continuing.

192.    Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, has obtained an Affidavit of Merit from Kelly Roehm, RN, RAC-CT, CLNC describing the aforesaid and stating that the care and/or treatment rendered to Herman Keene deviated from and fell outside acceptable professional treatment standards.   **See Affidavit of Merit attached hereto as Exhibit "A".**

**WHEREFORE** Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, demands judgment against all Defendants (real and fictitious) individually, jointly, severally and in the alternative, which will reasonably compensate Herman Keene for his significant injuries, pain and suffering, medical expenses and other damages sustained together with attorneys' fees, punitive damages, treble damages, interest, costs of suit and other damages provided by the Act and as the Court deems proper.

## VII.    COUNT FOUR

## FICTITIOUS INDIVIDUAL/ENTITY NEGLIGENCE & ADDITIONAL MISCONDUCT

Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, repeats and re-alleges the allegations contained in Paragraphs 1 – 192 above as though more fully set forth herein and further alleges and states as follows:

193.    Plaintiff herein named as Defendants: UNITED STATES OF AMERICA; VA NEW JERSEY HEALTH CARE SYSTEM; NEW JERSEY HEALTH CARE SYSTEM; LYONS VA MEDICAL CENTER; VA COMMUNITY LIVING CENTER - LYONS; with respect to the ownership, operation, management and provision of care to residents, including Herman Keene, at the VA-CLCL nursing home facility.

194.    Based on investigation and publicly available information the VA Defendants

named in this Complaint, individually and collectively, are the licensed operators, officers, owners, Administrators and managers of the VA Community Living Center facility.

195.   ABC COMPANIES (1-10) and DEF PARTNERSHIPS (1-10) (fictitious names, the real names being unknown) are all entities and/or individuals involved in the care provided to Herman Keene and/or involved in the ownership, operation and/or management of the persons and/or entities that provided care to Herman Keene while he was a VA-CLCL resident in 2019 and at all times relevant to Plaintiff's Complaint.

196.   JOHN DOE PHYSICIANS (1-10) (fictitious names, the real names being unknown) are individuals, corporations and/or other legal entities involved with the medical care provided to Herman Keene and/or involved in the ownership, operation and/or management of persons and/or entities that provided medical care to Herman Keene while he was a VA-CLCL resident.

197.   JANE DOE NURSES (1-20) (fictitious names, the real names being unknown) are individuals, corporations and/or other legal entities involved with the nursing care provided to Herman Keene and/or involved in the ownership, operation and/or management of persons and/or entities that provided nursing care to Herman Keene while he was a VA-CLCL resident.

198.   JANE MOE TECHNICIANS (1-10) (fictitious names, the real names being unknown) are individuals, corporations and/or other legal entities of others not previously named or identified (real or fictitious) involved with the care provided to Herman Keene and/or involved in the ownership, operation and/or management of persons and/or entities that provided care to Herman Keene while he was a VA-CLCL resident.

199.   CNAs and PARAMEDICAL EMPLOYEES (1-20) (fictitious names, the real names being unknown) are individuals, corporations and/or other legal entities involved with the

care provided to Herman Keene and/or involved in the ownership, operation and/or management of persons and/or entities that provided care to Herman Keene while he was a VA-CLCL resident.

200. Each of the fictitiously named Defendants referenced in the paragraphs above provided negligent care, grossly negligent care and deviated from the standard of care in the care and treatment of Herman Keene and in the facility's ownership, operation and management duties owed to Mr. Keene as set forth herein and in each and every Count contained in this Complaint. They each further violated Mr. Keene's resident's rights.

201. As a direct and proximate result of the aforesaid negligence, gross negligence, deviations from the standard of care, carelessness, recklessness, violation of applicable statutes and regulations, and violation of resident's rights by these fictitiously named Defendants (individually and collectively) as set forth herein and in each and every Count of the within Complaint, Herman Keene sustained serious personal injuries, incurred medical expenses for care and treatment and suffered additional damages.   Mr. Keene's injuries and damages are permanent and continuing.

202. Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, has obtained an Affidavit of Merit from Kelly Roehm, RN, RAC-CT, CLNC describing the aforesaid and stating that the care and/or treatment rendered to Herman Keene deviated from and fell outside acceptable professional treatment standards.   **See Affidavit of Merit attached hereto as Exhibit "A".**

**WHEREFORE** Plaintiff Lillian Keene, as Power of Attorney for Herman Keene, demands judgment against all Defendants (real and fictitious) individually, jointly, severally and in the alternative, which will reasonably compensate Mr. Keene for his significant injuries, pain and suffering, medical expenses and other damages sustained together with attorneys' fees, punitive damages, treble damages, interest, costs of suit and other damages as the Court deems proper.

## REJECTION OF ANY NOTICES OF ALLOCATION

Plaintiff rejects any Notices of Allocation asserted by any Defendant. Plaintiff insists that the details upon which any claim of allocation is based be provided to Plaintiffs in a timely manner in discovery as is required by Young v. Latta, 123 N.J. 584 (1991).

## PRESERVATION NOTICE

Notice is hereby provided that Defendants must preserve any and all potential evidence, including, but not limited to, medical records, notes, electronic data, tissue samples, pathology slides and blocks, photographs, etc. Failure to preserve such evidence may result in spoliations charges and sanctions.

## DEMAND FOR TRANSCRIPTION

Plaintiff demands that each Defendant produce a typed transcription of any and all of its handwritten office records and/or hospital records within thirty (30) days of service of the Complaint.

## STATEMENT OF DAMAGES

Plaintiff demands economic and non-economic damages in the total amount of five million dollars ($5,000.000.00).

## CERTIFICATION

I hereby certify that this matter is not the subject of any other action pending in any court or a pending arbitration proceedings, nor is any other action or arbitration proceeding contemplated. All parties known to Plaintiff at this time who should have been joined in this action have been joined.

SUGARMAN LAW, LLC
Attorneys for Plaintiff

By: _____
BARRY R. SUGARMAN

Dated: April 20, 2021

# EXHIBIT A

### *AFFIDAVIT OF MERIT*

Attached hereto is an Affidavit of Merit.   If any defendant has any objection to the sufficiency of the Affidavit of Merit, demand is hereby made that plaintiff be made immediately notified of any such deficiencies so that it may be corrected if necessary and within the time constraints of *N.J.S.A.* 2A:53A-26, *et. seq*.

State of          Texas                     )
                                            )
County of        Hays                       )

Kelly Roehm, RN, RAC-CT, CLNC of full age, being duly sworn according to law, upon her oath, deposes and says:

1.  I am a licensed Registered Nurse in the State of New Jersey and have been actively practicing nursing continuously since 1994.

2.  My practice is devoted substantially to the general area or specialty involving the action involved herein for a period of at least five years.   A copy of my Curriculum Vitae is attached as **Exhibit "A"**.

3.  I have worked as a registered nurse in multiple New Jersey nursing homes and nursing homes in other parts of the United States.   I have held positions including: Director of Nursing, MDS Coordinator, Registered Nurse Assessment Coordinator, Unit Manager and RN Supervisor.   I have also worked as a registered nurse in hospital and rehabilitation center settings.

4.  I reviewed the relevant records of and information for Herman Keene including, but not limited to, his records from the VA Community Living Center – Lyons ("VA-CLCL"), Morristown Medical Center and the Robert Wood Johnson University Hospital Wound Healing Center.   These records address Mr. Keene's care needs and the care provided during his continuing VA-CLCL residency.

5.  Relevant to this Affidavit of Merit, the reviewed records and information address Mr. Keene's pressure injury prevention care needs, the care VA-CLCL provided him before his pressure injuries developed, his continuing care needs and the care and treatment provided after his wounds developed at VA-CLCL and the development and progression of his multiple pressure injuries and additional damages during his VA-CLCL residency.

6.  Based on my review of these records and information, and my qualifications and experience in this area, it is my opinion that there exists a reasonable probability that the care, skill and/or knowledge exercised or exhibited in the care, treatment, practice or work that is the subject of the Mr. Keene's Complaint against VA-CLCL and the related entities named in the Complaint deviated from and fell outside acceptable professional treatment standards.

7.  It is my opinion that there exists a reasonable probability that that care and treatment Mr. Keene received from the nurses, nursing staff, other VA-CLCL staff, Administrator, Managers, Owners, and by and through the entities named in the Complaint during his VA-CLCL residency, and in 2019 specifically, deviated from and fell outside acceptable professional treatment standards. It is my opinion that these persons and entities neglected

and grossly neglected their duties with respect to Herman Keene's care and treatment and violated Mr. Keene's resident's rights.

8.      I further certify that I have no financial interest in the outcome of this case.


I HEREBY CERTIFY that the foregoing statements made by me are true.   I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


_Kelly Roehm, RN, RAC-CT, CLNC_
KELLY ROEHM, RN, RAC-CT, CLNC

BEFORE ME, the undersigned authority, personally appeared **KELLY ROEHM, RN, RAC-CT, CLNC** who is personally known to me or has produced as identification and who after first being fully sworn deposes and says that he/she has executed the foregoing AFFIDAVIT and that said FACTS IN THE AFFIDAVIT are true and correct to the best of his/her knowledge and belief.

WITNESS my hand and seal in the aforesaid State and County this ___18th___ day of ___April___, 2021.

Nicholas Upchurch

**Nicholas Upchurch**

ID NUMBER
132908978
COMMISSION EXPIRES
**February 3, 2025**

_Nicholas Upchurch_
Notary Public, State of ___Texas___
Name: ___Nicholas Upchurch___

( )      Personally known to me.

(X)      Produced Drivers License identification

Notarized online using audio-video communication

My Commission Expires:  02/03/2025

**NOTICE: IF ANY DEFENDANT HAS ANY OBJECTION TO THE SUFFICIENCY OF THIS AFFIDAVIT OF MERIT, DEMAND IS HEREBY MADE THAT THE DEFENDANT IMMEDIATELY NOTIFY THE PLAINTIFF OF ANY SUCH ALLEGED DEFICIENCIES SO THAT SAME MAY BE CORRECTED, IF NECESSARY, AND WITHIN THE TIME CONSTRAINTS OF N.J.S.A. 2A:53a-26,** _et seq._

**Kelly Roehm, RN, RAC-CT, CLNC**
244 Rainbow Drive #14487
Livingston, TX  77399-2044
856-434-1673
KellyR@RoehmandAssociates.com


**SUMMARY OF QUALIFICATIONS**

- Clinically active as a Registered Nurse since 1994 in long term care, sub-acute rehab, assisted living and acute care facilities
- In-depth knowledge of the inner workings of nursing homes and the medical record
- Conduct on-going medical record reviews to ensure regulatory compliance
- Assist in annual state/federal survey process to ensure continued facility participation in Medicare/Medicaid programs
- Perform weekly utilization review for Medicare and MCO/HMO reimbursement

**PROFESSIONAL EXPERIENCE**

4/2020-Current   **Laurel Brook Rehabilitation and Healthcare,** Mt. Laurel, NJ
**Per Diem MDS Coordinator**

- MDS completion for OBRA and PDPM residents in a 220-bed facility
- Initiate and update care plans with clinical findings and interventions as needed
- Accurately assign ICD-10 codes for Medicare billing
- Conduct chart audits to ensure regulatory compliance within the facility
- Schedule and assign quarterly resident assessments in conjunction with MDS
- Staff education for on-going compliance with the MDS process within the facility

2018-11/2019   **Laurel Brook Rehabilitation and Healthcare,** Mt. Laurel, NJ
**MDS Coordinator**

- Manage all scheduling, coordination and completion of resident OBRA, PPS, PDPM and quarterly nursing assessments in a 220-bed facility
- Weekly utilization review for HMO and Medicare A reimbursement
- Staff education for on-going compliance with the MDS 3.0 process
- Conduct chart audits to ensure regulatory compliance within the facility
- Conduct quarterly clinical assessments of residents in the facility relative to MDS completion, i.e. Braden, Fall risk, BIMS, Pain
- Initiate and update care plans with clinical findings and interventions as needed
- Assess residents on admission to the facility as needed
- Perform bedside nursing tasks, medication administration as needed
- Annual vaccination administration to residents and staff

2011-2018   **Lutheran Crossings,** Moorestown, NJ
**Director of Nursing; Registered Nurse Assessment Coordinator-Certified; Nursing Supervisor (per diem)**

- Oversee and manage all nursing staff within the facility
- Manage all scheduling, coordination and completion of resident OBRA, PPS and quarterly nursing assessments in a 200+ bed facility
- Weekly review for HMO and Medicare A reimbursement
- Staff education for on-going compliance with the MDS 3.0 process
- Conduct chart audits to ensure regulatory compliance within the facility
- Conduct quarterly clinical assessments of residents in the facility relative to MDS completion, i.e. Braden, Fall risk, BIMS, Pain
- Attend bi-weekly wound rounds with nursing team leaders
- Initiate and update care plans with clinical findings and interventions as needed
- Assess residents on admission to the facility- Long term care and Assisted Living

- Supervision of assisted living staff and residents as needed
- Assess and evaluate residents for emergent transfers to acute care- LTC and AL
- Administer annual vaccinations to residents and staff

2010-2011 **Avista Healthcare,** Cherry Hill, NJ
**Registered Nurse Assessment Coordinator**

- Manage all OBRA and PPS assessment scheduling and completion for the long term care residents in the facility
- Ensure the timely transmission of data of all residents within the facility to CMS
- Participate in weekly committee meetings to ensure quality patient care
- Assist in implementing process changes to provide ongoing quality patient care
- Conduct quarterly clinical assessments of long term care residents in relation to MDS completion and coding

2009-2010 **Care One Moorestown- ADON; Care One Harmony Village,** Moorestown, NJ
**Wellness Director-DON**

- Managed the nursing department within the facility to maintain quality standards of care
- Advised medical staff, department heads, and Administrator in matters related to nursing service
- Instituted organizational structure and communication systems that include all levels of nursing staff to promote effective delivery of care
- Provided wound care as needed
- Staff education and in-service training
- Clinical assessment of potential admissions
- Conducted quarterly clinical assessment of each resident to update service plans and ensure adequate level of care
- Assess resident condition/status during acute illness or injury

2005-2009 **Abigail House for Nursing and Rehab,** Camden, NJ
**MDS Coordinator/Employee Health Nurse**

- Manage federal and state required MDS assessments and care plans for a 183 bed facility
- Monitor quality indicators on a monthly basis and determine action plans to correct areas of concern
- Participate in weekly committee meetings to ensure quality patient care
- Responsible for maintaining employee health records and immunizations

2004-2005 **Care One at Moorestown,** Moorestown, NJ
**Clinical Reimbursement Coordinator**

- Manage federal and state required MDS assessments and care plans for a 60 bed Medicare/Medicaid certified sub-acute facility
- Ensure the timely transmission of data of all residents within the facility to CMS
- Monitor quality indicators on a monthly basis and determine action plans to correct areas of concern
- Participate in weekly committee meetings to ensure quality patient care
- Perform admission assessments for assisted living residents as needed
- Initiate care plans for AL residents

- Assess and evaluate AL residents for emergent transfers to acute care

2003-2004   **Innova Health and Rehabilitation,** Mt. Laurel, NJ
             **Registered Nurse Assessment Coordinator**

- Manage federal and state required MDS assessments and care plans for a 280 bed facility
- Ensure the timely transmission of data of all residents within the facility to CMS
- Monitor quality indicators on a monthly basis and determine action plans to correct areas of concern
- Participate in weekly committee meetings to ensure quality patient care
- Communicate with MCO/HMO companies to determine continued eligibility for services

2001-2003   **HCR Manorcare,** Cherry Hill, NJ
             **MDS Coordinator**

- Manage federal and state required MDS assessments and care plans for a 108 bed Medicare/Medicaid certified sub-acute facility
- Ensure the timely transmission of data of all residents within the facility to CMS
- Monitor quality indicators on a monthly basis and determine action plans to correct areas of concern
- Participate in weekly committee meetings to ensure quality patient care

1998-2001   **Highland House of Fayetteville,** Fayetteville, NC
             **Staff Nurse**
             **RN Supervisor**
             **MDS Coordinator**

- Participate in the review of potential residents for admission to SNF, ICF or HA beds
- Managed federal and state required MDS assessments and care plans for residents within the facility
- Ensure the timely transmission of data of all residents within the 156 bed facility to HCFA (CMS)
- Provided ordered wound care daily to assigned residents
- Weekly wound rounds with wound care nurse
- Provide direct nursing care to all assigned residents

1996-1998   **Fayetteville Health Center,** Fayetteville, NC
             **Director of Nursing**

- Responsible for initial licensure/certification of the facility
- Facilitated the hiring of all licensed nursing staff
- Oversee the daily operation of a 100-bed facility
- Developed QA tools to maintain quality of care
- Ongoing staff education and training
- Communicate with state surveyors during survey process
- Monitor and supervise assisted living/rest home area of building
- Perform pre-admission and admission assessments for assisted living and long term care residents of facility

1995-1996   **Mary Conrad Center,** Anchorage, AK
             **Unit Manager**

- Provide direct care to assigned sub-acute residents
- Medication administration
- Documentation
- Supervise all nursing staff within the facility

1994-1995   **Providence Hospital,** Anchorage, AK
            **Staff Nurse**

- Provide direct care to patients on a Medical-Surgical unit
- Medication administration
- Patient assessment
- Documentation

1990-1992   **Humana Hospital,** Anchorage, AK
            **Certified Nursing Assistant**

- Assist RN with patient care in an acute setting
- Documentation

1985-1990   **Various Facilities,** Washington and Alaska
            **Certified Nursing Assistant**

- Assist RN's/LPN's with patient care in nursing homes
- Documentation

**EDUCATION**

- Associate Degree in Nursing-Associate of Applied Science, University of Alaska-Anchorage' School of Nursing and Health Sciences, Anchorage, AK, Cum Laude; 1994
- Certified Legal Nurse Consultant, Vickie Milazzo Institute, Houston, TX; 2012
- Resident Assessment Coordination Certification, American Association of Nurse Assessment Coordination, Denver, CO; 2012

**CERTIFICATIONS/MEMBERSHIPS**

- Registered Nurse- Licensed in NJ, PA, and TX. Previous licenses held in AK and NC
- Resident Assessment Coordinator Certified (RAC-CT)- American Association of Nurse Assessment Coordinators
- Certified Legal Nurse Consultant (CLNC) - Vickie Milazzo Institute, a division of Medical-Legal Consulting Institute, Inc.
- BLS (CPR and AED)- American Heart Association